**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ASPLUNDH TREE EXPERT COMPANY,

        Plaintiff,                    Case Number:  02-CV-74906

v.                                                JUDGE PAUL D. BORMAN
                                                    UNITED STATES DISTRICT COURT

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 17
HEALTH AND WELFARE FUND,

        Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND
JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

        Now before the Court is Plaintiff's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e), timely filed on April 11, 2005, within ten days of the entry of judgment.  For the following reasons, the Court DENIES that motion.

        A court may grant a party's motion, under Rule 59(e), to alter or amend the judgment based upon "a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice."  *GenCorp, Inc. v. Am. Intern. Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999).  However, a motion under Rule 59(e) is "aimed at *re*consideration, not initial consideration."  *FDIC v. World Univ. Inc.,* 978 F.2d 10, 16 (1st Cir. 1992).  Thus, a party may not use a Rule 59(e) motion to raise an argument that he could have and should have raised before the court ruled on the matter underlying the Rule 59(e) motion. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir. 1998).

        Plaintiff asks the Court to reconsider its March 28, 2005, opinion and order to the extent

that it entered summary judgment against Plaintiff and in favor of Defendant as to vacation/personal-time contributions that Plaintiff overpaid Defendant from December 18, 2000, through July of 2001.  Plaintiff asserts that the Court's ruling was clearly erroneous and inflicted a manifest injustice upon Plaintiff.  (Br. at 1.)  As to this ruling, the Court reasoned as follows:

> Defendant Fund notes that Plaintiff continued to pay contributions for vacation/personal time through July of 2001 even though, in December of 2000, Detroit Edison notified Plaintiff that it was overpaying contributions for vacation/personal time; Plaintiff and Detroit Edison modified their contract to absolve Detroit Edison of its obligation to reimburse Plaintiff for those contributions; and Plaintiff stopped billing Detroit Edison for reimbursement for those contributions.  (Def.'s Resp. at 14.)  Thus, according to Defendant, Plaintiff's payment of the $55,652.80 in contributions for vacation/personal time after it learned of its overpayment of such contributions was not made by mistake, but, rather, was made intentionally or with reckless disregard of whether such contributions were necessary. (*Id.* at 15.)
>
> According to Plaintiff, it was notified on October 4, 2002, that a Fund-mandated audit of Plaintiff's contributions for the years of 1998-2000 uncovered that Plaintiff had underpaid $15,936.69 in contributions over that three-year period, for which amount the Fund billed Plaintiff along with a 10% penalty; the audit never uncovered Plaintiff's overpaid contributions in 2000.  (Pl.'s Resp. at 4; Kinney Aff. at ¶¶ 7-8.)  According to Plaintiff, this audit demonstrates that it overpaid the contributions by mistake.  (Pl.'s Resp. at 17.)  However, the audit's failure to detect Plaintiff's overpaid contributions for 2000 and Plaintiff's knowledge of that failure in 2002 do little to negate Defendant Fund's contention that Detroit Edison notified Plaintiff of the overpayment in December of 2000 and that Plaintiff took various actions in reliance upon this notification but, yet, did not cease overpaying the contributions to the Fund.
>
> In its response, Plaintiff recites the first element of the cause of action as requiring that the employer have mistakenly overpaid contributions.  (Resp. at 11.)  However, Plaintiff, whether in its pleadings or at oral argument, has neither presented any argumentation on nor any evidence to rebut Defendant's well-founded assertion that Plaintiff's overpayment of contributions to the Fund after Detroit Edison advised Plaintiff of that overpayment, which occurred sometime between December 1, 2000, and December 18, 2000, was no longer made by mistake.  Based upon this evidentiary deficiency, no reasonable jury could find that Plaintiff mistakenly overpaid contributions from the time that it received that notice through July of 2001.  Thus, Plaintiff's restitution action for such contributions fails as a matter of law.

(March 28, 2005, Opinion at 11-13.)

In the instant Rule 59(e) motion, Plaintiff asserts that the Court committed clear error by relying upon the "unsupported facts" and "rhetoric" that Defendant placed before it regarding Detroit Edison's alleged December, 2000, notification to Plaintiff that it was overpaying Defendant contributions for vacation/personal time.  (Mot. at 1; Br. at 1-2.)  Plaintiff concedes that it failed to respond, whether in its response or at oral argument, to Defendant's contention that Plaintiff's overpayment of contributions to Defendant for personal/vacation time from December of 2000 through July of 2001 was not "mistaken" because Detroit Edison, in December of 2000, notified Plaintiff of that overpayment.  (Br. at 1.)  However, Plaintiff maintains that the Court had before it evidence demonstrating that such overpayment was, in fact, mistaken. (Mot. at 1-2.)  Relying upon the 1979 case of *Smith v. Hudson,* 600 F.2d 60 (6th Cir. 1979), Plaintiff further maintains that the Court had a duty to "review the entire record before it on summary judgment, not just those portions specifically placed before it by one party or the other."  (Mot. at 1-2.)

In *Smith,* the United States Court of Appeals for the Sixth Circuit held that, "even though the plaintiffs offered no timely response to the defendants' motion for summary judgment, the [d]istrict [c]ourt could not use that as a reason for granting summary judgment without first examining all [of] the materials properly before it under Rule 56(c)."  600 F.2d at 65.  In that case, the district court found no genuine issues of material fact upon considering only those materials that the defendant offered in support of its summary-judgment motion, rather than the previously-filed depositions of the plaintiffs and answers to interrogatories, which created genuine issues of material fact.  *Id.* at 64-66.  In a Rule 59(e) motion, the plaintiffs, for the first

3

time, specifically directed the district court's attention to that previously-filed contradictory evidence. *Id.* at 65. In reversing the summary-judgment award for the defendant, the Sixth Circuit rejected the defendant's contention that the district court "was not obligated to search the entire record in the case when . . . the materials offered in support of the motion showed that no disputed factual issue was present, and when . . . the plaintiffs offered no timely response in opposition to the motion." *Id.* at 63. The Court reasoned that Rule 56(c) obligated the district court to consider all of the materials properly on file before the court, not just the materials specifically offered in support of the motion. *Id.* at 64. The Court noted:

> We do not think that this is an unreasonable burden to place on the [d]istrict [c]ourt. Rule 56(c) simply requires the [d]istrict [c]ourt to review the entire record before deciding whether to render a decision on the merits. This is no different than the obligation placed on the court following a full trial on the merits, and the litigants are entitled to no less.

*Id.*

While *Smith* has not been expressly overruled, the Court is highly skeptical of its current precedential value. In *Street v. J.C. Bradford & Co.,* the Sixth Circuit recognized that three 1986 decisions of the Supreme Court–*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986)–dawned a new era in summary judgment practice. 886 F.2d 1472, 1480 (6th Cir. 1989). The *Street* Court recognized that these cases established that "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80.

Indeed, in *Guarino v. Brookfield Township Trustees,* the Sixth Circuit affirmed a district court's award of summary judgment to the defendant where, absent plaintiff's response to the

4

defendant's summary-judgment motion, the district court "based its review of the facts upon the materials presented and highlighted by the" defendant and where those materials, even when viewed in the light most favorable to the plaintiff, demonstrated the absence of genuine issues of material fact. 980 F.2d 399, 401, 403 (6th Cir. 1992). The Court expressly rejected the plaintiff's contention that, in such a situation, the district court was required, *sua sponte,* to search the record for such issues of fact rather than simply relying upon the evidence that the movant designated in support of its motion. *Id.* at 404. Among concerns of practicality and judicial economy, the Court reasoned, in part:

> . . . [I]t seems utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion. Such a role would carry the court far beyond simply reviewing evidence in 'the light most favorable to the non-moving party,' or giving effect to inferences reasonably arising from the designated evidence. For these and other entirely sound reasons, . . . Rule [56(e)] requires the non-moving party to do its own work, and to assist the trial court by responding to the motion, pointing out as specifically as is reasonably possible facts that might demonstrate the existence of genuine issues.

*Id.* at 406. Summarizing the current state of summary-judgment practice, the Court held:

> A trial court, in reviewing a motion for summary judgment, holds the moving party to the burden . . . to show 'that there is no genuine issue as to material fact, and that the moving party is entitled to a judgment as a matter of law.' The fact that the non-moving party does not respond, or that the motion may otherwise seem unopposed, does not change this requirement or lessen the burden on the moving party or the court.

> In the absence of a response, the court must review carefully those portions of the submitted evidence designated by the moving party. Neither the trial court nor appellate court, however, will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. Rather, in the reasoned exercise of its judgment[,] the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'

> If such evidence supports a conclusion that there is no genuine issue of material fact, the trial court should determine that the moving party has carried its burden . . . .

*Id.* at 410 (internal citations omitted).

In this case, Plaintiff asserts that the evidence that Defendant designated for the Court's review did not, as a matter of law, establish that Detroit Edison advised Plaintiff in December of 2000 that it was overpaying Defendant contributions for vacation/personal time. (Br. at 8.) In its brief in support of its summary-judgment motion,[1] Defendant designated specific portions of the deposition of Kenneth Cash ("Cash"), an employee of Detroit Edison, on this issue. (Br. at 7.) Cash testified as follows:

> . . . I remembered after completing a period of time where . . . [Plaintiff] billed . . . [Detroit Edison] for work, reading the union agreement and seeing that Health and Welfare was not to be paid on vacation hours. So, and then I recognized that . . . [Detroit Edison], in the bill rate that . . . [Plaintiff] billed us for paid vacation hours, that Health and Welfare was included in that billable rate.

(Cash. Dep. at 10.) In other words, Cash testified that, after reading Plaintiff's union agreement with Defendant, he realized that Plaintiff was mistakenly paying Defendant contributions on vacation/personal time, and that Detroit Edison was reimbursing Plaintiff for those contributions. Cash further testified that, after making this discovery, he made Plaintiff, via Scott Asplundh, "aware of that." (*Id.*) Cash testified that, at the end of 2000 or the beginning of 2001, Detroit Edison and Plaintiff's contract, pursuant to Detroit Edison's request, was changed so that Detroit

---

[1] In its brief, Defendant stated that it would assume *arguendo* that Plaintiff overpaid the excess contributions by mistake. (Br. at 8.) Elsewhere in that same brief, however, Defendant argued that the equities did not favor Plaintiff after Detroit Edison, in December of 2000, advised Plaintiff that it was overpaying Defendant contributions for vacation/personal time, and Plaintiff ceased billing Detroit Edison for such contributions but continued paying Defendant for them. (Br. at 21.)

Edison would no longer be obligated to reimburse Plaintiff for contributions on vacation/personal time, and that, thereafter, Plaintiff did not invoice Detroit Edison for such contributions.[2] (*Id.* at 20, 22.) Of special note, in response to whether Cash advised Plaintiff, via Scott Asplundh, that "Detroit Edison was paying for paid vacation time to the Fund" before the adjustment in Plaintiff and Detroit Edison's contract, Cash testified:

> It was pretty close. I mean, at the time that I had discovered it, made it known, I mean, it all happened like right around the same time.

(Cash Dep. at 22.)[3]

Contrary to Plaintiff's instant contention, Cash's deposition testimony, even when viewed in the light most favorable to Plaintiff, demonstrates, as a matter of law, that Detroit Edison, in December of 2000, notified Plaintiff that it was mistakenly overpaying Defendant for vacation/personal-time contributions. Although Plaintiff asserts, for the first time, that Cash's deposition testimony simply indicates that Detroit Edison notified Plaintiff that it would not continue reimbursing Plaintiff for contributions on vacation time, not that Detroit Edison notified Plaintiff that it was mistakenly overpaying Defendant for such contributions, such an assertion is misplaced. (Mot. at 3-4.) Rather, as noted above, Cash testified that, after reading Plaintiff's

---

[2]Clarifying his earlier testimony, Cash testified that Detroit Edison and Plaintiff's contract was corrected regarding the vacation/personal-time contributions on December 27, 2000, effective December 18, 2000. (Cash Dep. at 28.)

[3]Cash further testified that Plaintiff did not get its overpayments for vacation/personal time "internally . . . straight" until sometime after the change in Detroit Edison and Plaintiff's contract. (Cash Dep. at 22.) Of special note, however, Cash testified that Plaintiff would bill Detroit Edison for "reimbursement" on a weekly basis for work performed, Detroit Edison would pay the invoice, and then, some time later, Plaintiff would pay Defendant for contributions owing. (Cash Dep. at 18.) In other words, Detroit Edison would reimburse Plaintiff for the contributions well in advance of when Plaintiff paid them to Defendant. (*Id.*)

7

union agreement with Defendant and realizing that Plaintiff was mistakenly paying Defendant contributions on vacation/personal time, Cash made Plaintiff, via Scott Asplundh, "aware of that." (Cash Dep. 10.) As to what "that" reasonably referred, it was discussed in the context of the "overpayment," not the contract change, to which Cash did not testify until later. (*See id.* at 9-11.) Moreover, in response to when Cash advised Plaintiff, via Scott Asplundh, that "Detroit Edison was paying for paid vacation time to the Fund," Cash testified that he so notified Plaintiff "pretty close" to or "right around the same time" as the contract change in December of 2000. (Cash Dep. at 10, 22.) In any event, it would strain credulity to believe that Detroit Edison, in December of 2000, requested Plaintiff to modify their contract to release Detroit Edison from its obligation to "reimburse" Plaintiff for vacation/personal-time contributions to Defendant without mentioning Cash's contemporaneous discovery that Plaintiff, pursuant to the union contract, was mistakenly overpaying such contributions to Defendant.

In response to Defendant's summary-judgment motion, Plaintiff simply asserted that the audit that Defendant performed for the period of 1998-2000 "failed to discover the overpayments," and that the "overpayments were simply the product of a mistake–and the Fund has offered no evidence to suggest otherwise." (Resp. at 17.) In support, Plaintiff simply cited to the affidavit of Patricia Kinney ("Kinney"), in which Kinney averred that Plaintiff, on October 4, 2002, was advised that Defendant's audit for the years 1998-2000 revealed an underpayment, not the overpaid vacation/personal-time contributions. (Kinney Aff. at ¶¶ 7-8.) Yet, as the Court found:

> . . . [T]he audit's failure to detect Plaintiff's overpaid contributions for 2000 and Plaintiff's knowledge of that failure in 2002 do little to negate Defendant Fund's contention that Detroit Edison notified Plaintiff of the overpayment in December of 2000 and that Plaintiff took various actions in reliance upon this notification

but, yet, did not cease overpaying the contributions to the Fund.

(March 28, 2005, Opinion at 12.)  Thus, Plaintiff failed to designate for the Court's review any evidence rebutting Defendant's proffered evidence that, in December of 2000, Detroit Edison notified Plaintiff that it was mistakenly overpaying Defendant for vacation/personal-time contributions such that Plaintiff's overpaid contributions from December of 2000 through July of 2001 were mistaken.

In the instant motion, Plaintiff, for the first time, specifically designates for the Court's review Kinney's deposition testimony on the issue of when Detroit Edison advised Plaintiff that it was mistakenly overpaying Defendant vacation/personal-time contributions.  Even if the Court were to permit Plaintiff's tardy expansion of the relevant "facts at hand," *see Guarino,* 980 F.2d at 404, such testimony would be insufficient to defeat Defendant's summary-judgment motion.  Plaintiff asserts that Kinney's testimony demonstrates that Detroit Edison, via Cash, did not notify Plaintiff that it was mistakenly overpaying Defendant vacation/personal-time contributions until the summer of 2001.  (Mot. at 6, 9; Kinney Dep. at 13, 17-18.)  In support, Plaintiff underscores that Kinney testified, in her deposition, that Scott Asplundh approached Mary Stahl in July of 2001 to investigate whether Plaintiff paid contributions to Defendant for vacation/personal time.  (Kinney Dep. at 17-18.)  Yet, Kinney's deposition testimony does nothing to negate Cash's testimony, as set forth above, that Cash advised Plaintiff, via Scott Asplundh, of Plaintiff's overpaid contributions to Defendant in December of 2000.  Rather, Kinney's testimony simply shows that it was not until July of 2001 that Scott Asplundh requested an investigation into those overpayments, of which he had notice in December of 2000.

Pursuant to Rule 59(e), Plaintiff asks the Court to reverse its judgment awarding Defendant and denying Plaintiff summary judgment as to Plaintiff's overpaid vacation/personal-time contributions to Defendant from December 18, 2000, through July of 2001. (Mot. at ii.) The Court concludes, however, that Plaintiff has failed to establish the requisite entitlement to relief under Rule 59(e). Specifically, contrary to Plaintiff's contention otherwise, the challenged ruling neither is clearly erroneous nor inflicted a manifest injustice upon Plaintiff. (Br. at 1.) Accordingly, the Court DENIES Plaintiff's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e).

SO ORDERED.

                s/Paul D. Borman
                PAUL D. BORMAN
                UNITED STATES DISTRICT JUDGE

Dated: June 27, 2005

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 27, 2005.

                s/Jonie Parker
                Case Manager